LESLIE KLEIN
6454 Van Nuys Blvd., Suite 150
Van Nuys, California 91401
(818) 756-2000

LESLIE KLEIN, Debtor
In Pro Se

FILED
NOV 17 2026
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>**LESLIE KLEIN,**<br><br>Debtor | **CASE NO. : 2:23-bk-01990-NB**<br><br>**Chapter 11**<br><br>**MOTION OF DEBTOR LESLIE KLEIN TO RECONSIDER DEFAULT JUDGMENT AGAINST POLICY OF ROSALIA FELDMAN; DECLARATION OF LESLIE KLEIN** |
| BRADLEY D. SHARP, Trustee | **DATE:** December 1, 2026<br>**TIME:** 2:00 P.M.<br>**PLACE:** Courtroom 1545<br>255 E. Temple Street<br>Los Angeles, CA 90012<br><br>**HON. NEIL BASON**<br>**JUDGE PRESIDING** |

**TO THE COURT AND TO ALL INTERESTED PARTIES:**

Leslie Klein hereby moves to Reconsider the Default Judgment against the Policy of Rosalia Feldman on the grounds that the Trustee failed to serve a necessary party or her Attorney,

as set forth in the Declaration of Leslie Klein filed herewith in support hereof.

Respectfully submitted,

/S/Leslie Klein
Leslie Klein, Debtor In Pro Se

## DECLARATION OF LESLIE KLEIN

LESLIE KLEIN Declares:

1. I have personal knowledge of all facts set forth in this declaration, and if called upon as a witness, I could and would testify competently thereto.

2. The Policy of Rosalia Feldman does not belong to this Bankruptcy Estate.

3. Pursuant to the Judgment attached hereto as Exhibit A, The Policy of Rosalia Feldman belongs to Ofra Orjachovsky

4. The Trustee failed to serve either necessary party Ofrah Orjachovsky or her Attorney, Lawrence [redacted] Lebowitz with any document in connection with the Default Judgment Against the Policy of Rosalia Feldman.

5. Accordingly, the Default Judgment must be set aside, for failure to serve Ofrah Orjachovsky or her Attorney, Lawrence [redacted] Lebowitz, Esq.

I declare under penalty of perjury under the Laws of the State of California and of the United States that the foregoing is true and correct. Dated this 6th day of November, 2026 at Van Nuys, CA.

/S/Leslie Klein
LESLIE KLEIN

**EXHIBIT A**

**This page is part of your document - DO NOT DISCARD**

**20250797685**

**Pages: 0026**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/13/25 AT 11:41AM**

| | |
|---|---|
| FEES: | 94.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 169.00 |

LEADSHEET

202511130730018

**00026011351**

015636461

**SEQ:
01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

E652839

RECORDING REQUESTED BY
LESLIE KLEIN & ASSOCIATES

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME LESLIE KLEIN & ASSOCIATES

STREET ADDRESS
6454 VAN NUYS BLVD., SUITE 150

CITY, STATE & ZIP CODE
VAN NUYS, CA 91401

11/13/2025

*20250797685*

SPACE ABOVE FOR RECORDER'S USE ONLY

JUDGMENT AFTER COURT TRIALON AMENDED PETITION

Title of Document

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

Lawrence M. Lebowsky (SBN 155732)
*lebowsky@lebowsky.net*
LAW OFFICE OF LAWRENCE M. LEBOWSKY
11150 W. Olympic Boulevard, Suite 1120
Los Angeles, California 90064
Telephone: (310) 914-4100
Facsimile: (310) 817-2256

Attorney for Beneficiary,
OFRA ORJACHOVSKY

Electronically FILED
Superior Court of California
County of Los Angeles
8/28/2024 3:52 PM
David W. Slayton
Executive Officer/Clerk of Court,
By M. Clark, Deputy Clerk

LAW OFFICE OF LAWRENCE M. LEBOWSKY
11150 W. OLYMPIC BLVD., SUITE 1120, LOS ANGELES, CALIFORNIA 90064

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

IN RE THE MATTER OF:

THE GREEN TRUST AGREEMENT

**CASE NO. 18STPB09979**
[Hon. Ruben Garcia]

**JUDGMENT AFTER COURT TRIAL ON AMENDED PETITION FOR INSTRUCTIONS REGARDING CONSTRUCTION OF TRUST TERMS**

Trial Date: August 8-9, 2023
Dept.: 9

The Amended Petition for Instructions Regarding Construction of Trust Terms filed on April 28, 2021 by Gil Ariel, and the objections thereto filed by Ofra Orjachovsky on October 21, 2021 came on for trial on August 8 and 9, 2023 before the Hon. Ruben Garcia, Judge presiding in Department 9 of this Court.

Petitioner Gil Ariel was represented by Steven C. Sosa, Esq. of The Law Office of Steven C. Sosa. Petitioner Gil Ariel was present on August 8, 2023. Objector and Beneficiary Ofra Orjachovsky was represented by Lawrence M. Lebowsky, Esq. of the Law Office of Lawrence M. Lebowsky.

On March 27, 2024, the Court entered its Statement of Decision, included in the following 19 pages:

FILED
Superior Court of California
County of Los Angeles

MAR 27 2024

David W. Slayton, Executive Officer/Clerk of Court
By: E. Amaya, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

In re The Matter of:

THE GREEN TRUST AGREEMENT

Case No.: 18STPB09979

**[FINAL] STATEMENT OF DECISION**

Honorable Ruben Garcia, Judge Presiding

Trial: August 8† and 9‡, 2023
Time: 9:30 A.M.† and 1:30 P.M.‡
Dept.: 9

AMENDED PETITION FOR INSTRUCTIONS REGARDING CONSTRUCTION OF TRUST TERMS
[Probate Code §§ 17200(b)(1), (6)]

///
///
///
///
///
///
///
///
///

This matter came on for trial on the regularly scheduled calendar on August 08 and August 09, 2023. Respondent, Ofra Orjachovsky, moved for judgment under Code of Civil Procedure § 631.8 after Petitioner, Gil Ariel, presented his case-in-chief. Section 631.8(a) provides that "[a]fter a party has completed his presentation of evidence in a trial by the court, the other party… may move for a judgment." Section 631.8 next provides that "[t]he court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision…." In order to grant Ofra's Motion for Judgment, the court need only be "persuaded that the plaintiff has failed to sustain its burden of proof." (*Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1262-1263.)

The focus is on whether Petitioner has made out a prima facie case or met the burden of proof for his cause of action. (*See, e.g., Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189 (motion for nonsuit or motion for judgment tests whether the plaintiff has met the initial burden posed by the prima facie case); *Higgins v. Higgins* (2017) 11 Cal.App.5th 648 (motion for judgment allows the court to forego the need for defendant to present evidence if it determines at the conclusion of the plaintiff's case-in-chief that plaintiff has failed to meet its burden of proof); *Jones v. Quality Coast, Inc.* (2021) 69 Cal.App.5th 766 (under Code of Civil Procedure section 631.8, the court acting as a trier of fact may enter judgment in favor of defendant if it concludes that plaintiff failed to sustain its burden of proof).)

The court has considered the pleadings, evidence including exhibits, testimony and closing briefs, and Objections to [Proposed] Statement of Decision, filed on February 28, 2024, and now issues its Final Statement of Decision pursuant to Code of Civil Procedure § 632 and C.R.C. rule 3.1590 in the form of Findings and Orders. The court has modified the [Proposed] Statement of Decision to address the concerns raised by the Petitioner in his Objections to [Proposed] Statement of Decision. The court, however, has not changed its ultimate decision to grant the Code of Civil Procedure § 631.8 motion.

///

///

## I. INTRODUCTION

Trustor David Y. Green executed the Green Trust Agreement (the "Trust") on November 18, 1998. Sara C. Green, his Mother, passed away on May 18, 2002. On December 28, 2016, Trustor passed away. Schedule "B" of the Trust provides:

> "The Trustee shall apply and distribute the net income and principal of the Trust Estate as follows:
>
> 1. During the lifetime of the Trustor, all income shall be distributed to Trustor.
> 2. During the lifetime of the Trustor, the Trustor shall have absolute discretion to distribute the trust principal to Trustor.
> 3. Upon the death of Trustor, all income and principal shall be distributed as follows:
>    A. The rest, residue and remainder of Trustor's estate shall be distributed to Trustor's mother, SARA C. GREEN as to 100%. In the event SARA C. GREEN shall predecease Trustor, then Trustor's estate shall be distributed as follows: CHAIM KESHET, OFRA ORJACHOVSKY, LEAH KURIANSKY, and YAFA ARIEL, all relatives living in Israel, as to one-fourth interest equally, share and share alike or to the survivor of them."

The named beneficiaries Chaim Keshet, Leah Kuriansky, and Yafa Ariel all predeceased Ofra, who is now the sole living named beneficiary.

Respondent argues the phrase "the survivor of them" means the survivor of the four beneficiaries named in that sentence: Chaim Keshet, Ofra Orjachovsky, Leah Kuriansky, and Yafa Ariel." Since Ms. Orjachovsky is the survivor of those four named beneficiaries, she is the sole beneficiary. There is no ambiguity in the meaning of the words per Respondent. Respondent further argues the evidence offered by Petitioner does not satisfy the preponderance standard for interpretation, let alone the required clear and convincing standard for reformation.

Respondent asserts that Petitioner provided no evidence, and therefore failed to meet his burden of proof, to establish that there was an ambiguity in the phrase "the survivor of them" which would allow it to be interpreted other than according to its plain meaning. Petitioner has the burden to establish that the phrase was reasonably susceptible of his requested interpretation. Respondent argues that Petitioner has not made a prima facie showing that he is entitled to relief. The Court agrees with the Respondent and grants Ofra's Motion for Judgment per Code of Civil

Procedure § 631.8.

## II. PETITIONER DID NOT MEET HIS BURDEN OF PROOF TO SHOW THAT THE PHRASE IS AMBIGUOUS:

Petitioner did not provide any evidence to show that the clear phrase "survivor of them" is ambiguous either on its face or otherwise under the circumstances of this case. Petitioner has the burden to prove by a preponderance of the evidence that the phrase is ambiguous. "An ambiguity is said to exist in an instrument when the written language is fairly susceptible of two or more constructions. [Citations omitted.]" (*Estate of White* (1970) 9 Cal.App.3d 194, 200.) Whether a testamentary instrument is ambiguous is determined as a matter of law. (*See In re Black's Estate* (1962) 211 Cal.App.2d 75, 90 (finding that trial court's holding as a matter of law that will was unambiguous precluded consideration of any extrinsic evidence).) The Court may, however, consider extrinsic evidence for the limited purpose of determining whether a phrase is ambiguous within the circumstances of the case. (See *Estate of Russell* (1968) 69 Cal.2d 200, 207.) Petitioner did not provide any extrinsic evidence to show that the language was fairly susceptible of more than meaning. *Id.*

Respondent argues the very same phrase in the instant case was found by the court in *Estate of Newmark* (1977) 67 Cal.App.3d 350, 352 to be unambiguous: "the trust provision 'or if any of them be dead, then to the survivor or survivors of them,' was neither latently nor patently ambiguous." The phrase at issue here is almost identical to that in *Estate of Newmark*. Respondent therefore maintains the phrase is not reasonably susceptible of more than one meaning, and is unambiguous.

Respondent argues that Petitioner Gil Ariel, a lay witness, testified only that he believed the subject language "sounds" ambiguous and that he can read it so that he is a survivor of Yafa. Respondent asserts this is a self-serving conclusion of law by a lay witness as to whether the phrase is ambiguous and does not come close to proof by a preponderance of evidence that the subject phrase was fairly susceptible of two or more constructions. Mr. Ariel testified that he did not discuss the Trust, Exhibit 1, with the Trustor David Green nor with Sara Green. There was no

family witness who testified that Mr. Green discussed his trust with any of them. Mr. Ariel testified that the first time he heard that Mr. Green passed away was in 2018, which was more than one year after his death. Similarly, the other family witnesses, Varda and Yakov, testified that they also did not learn of Mr. Green's death until 2018.

Respondent asserts that Mr. Klein, the drafting attorney, testified that he discussed the dispositive language with Mr. Green "a number of times." Mr. Klein testified that Mr. Green "made very clear to me what he wanted to do," that Mr. Green gave him the subject language to include in the Trust, and that was what Mr. Klein transcribed into the Trust. Mr. Klein testified that the beneficiaries were the people named in the Trust, and not their children and grandchildren. Mr. Klein testified that the Trust is very clear that Mr. Green wanted to give everything to the survivor of the four people named in the Trust. He testified that the Trust language does not mean that Mr. Green wanted to give the Trust assets to the children and grandchildren of the four named beneficiaries. He testified that in 1998 "family" meant the three siblings of Mr. Green's mother, Sara, who were alive and Ofra.

Mr. Klein was asked if he believed that the subject paragraph was ambiguous. Mr. Klein testified: "No not at all," that he has been doing trusts for fifty-three years and it is clear the Trust says survivor of them. Mr. Klein also testified that he spoke with Mr. Green after some of the four named beneficiaries passed away. He testified that he had discussed with Mr. Green that Ofra would receive everything as the survivor and asked Mr. Green if he wanted to make any changes to the Trust. Mr. Klein testified that Mr. Green said that he did not want to make any changes.

Respondent argues Petitioner did not meet his burden of proof by a preponderance of the evidence that the subject phrase is ambiguous and as such, the Motion should be granted. Petitioner argues there are two types of ambiguities that may arise when interpreting instruments. A patent ambiguity is an uncertainty that appears on the face of the instrument. (*Estate of Duke* (2015) 61 Cal.4th 871, 882.) A latent ambiguity is one that is not apparent on the face of the instrument, but is disclosed by some fact collateral to it. (*Estate of Russell* (1968) 69 Cal.2d 200, 207.) As *Estate of Russell* explained:

> "Extrinsic evidence always may be introduced initially in order to show that under the circumstances of a particular case the seemingly clear language of a will describing either the subject of or the object of the gift actually embodies a latent ambiguity for it is only by the introduction of extrinsic evidence that the existence of such an ambiguity can be shown. Once shown, such ambiguity may be resolved by extrinsic evidence."

(*Estate of Russell,* 69 Cal.2d at 207.)

Petitioner argues that Schedule B of the Trust consists of more than a single phrase. The residual clause states that the estate shall pass to "all relatives living in Israel, as to one-fourth interest equally, share and share alike or to the survivor of them." The word "or" establishes that "the survivor of them" is just one possible outcome. Petitioner believes the Motion ignores other equally important phrases as "one-fourth interest equally" and "share and share alike", which, if considered to the exclusion of "the survivor of them", would lead to a very different interpretation than the one offered by Ofra. Again, Prob. C. § 21120 requires that "[t]he words of an instrument are to receive an interpretation that will give every expression some effect..." The interpretation of these additional phrases, both by themselves and in conjunction with each other, are material facts the Court must weigh when construing Schedule B.

Notwithstanding Petitioner's argument, the Court agrees with Respondent that all the above phrases in Schedule B, the residual clause, support an interpretation, giving every expression some effect, that benefits Ofra, the sole survivor and sole beneficiary. The court agrees with Respondent that "all relatives living in Israel" refers to the four named beneficiaries. "One-fourth interest equally" describes what each named beneficiary receives. In short, applying § 21120 to Schedule B here, supports Respondent's interpretation that Ofra as the sole survivor, is the sole beneficiary. The court will summarize relevant trial testimony of Petitioner's witnesses before making its findings.

<u>Gil Ariel Testimony</u>:

Mr. Ariel shared with Mr. Klein that he is a survivor of Yafa. Mr. Ariel shared with Mr. Klein that it ["the survivor of them"] was ambiguous. He further testified it sounded very ambiguous because he believes he is a survivor of Yafa. Mr. Ariel can read it that he is a survivor

of her. Mr. Ariel testified he never discussed the Trust with David. Mr. Ariel learned in 2018 during a conversation with his uncle, Yakov Airel, that David Green had passed away. Mr. Ariel testified that Sara did not discuss her trust with him.

Varda Kuriansky Testimony:

Varda Kuriansky never heard David Green discuss his relationship with Ofra Orjachovsky. Ofra never discussed her relationship with David with Varda. Varda testified she and Ofra were close and would meet at least once a month. They had a nice relationship.

And over the course of this relationship, Varda never heard Ofra mention having any kind of close relationship with David. They never once talked about David. Varda did not notify David when her mother Leah died.

Varda testified that Sara was the one who was making the decisions and he followed whatever she wanted. Miss Kuriansky, however, conceded that David Green had no difficulty functioning during her visits with him. Miss Kuriansky admitted she was not an expert and she was not trained to render an opinion about somebody else's soul or spirit.

Varda did testify that she "cannot say that he did everything she [Sara] wanted because I wasn't the one living there, but I would say it's possible that he was making some decisions on his own. I don't know. I did not live there. I thought he went along with whatever she wanted."

Miss Kuriansky did not discuss David Green's Trust with David Green.

Yakov Ariel Testimony:

Yakov visited David and Sara Green when they resided in Los Angeles four times. In 1975 for a bar mitzvah. The other three times should have been 1991, 2000 and 2013 or 14. Yakov never knew about a trust. David or Sara never told Mr. Ariel that they had made a trust. Yakov was not aware that Sara Green made a trust in 1998.

Yakov did not notify David when Yafa died. During his visits with David and Sara, Yakov observed hoarding activity by David. During the second visit in 1991, the floor was full with newspapers and things that he would save.

In response to whether Yakov observed instances where David had difficulty performing basic tasks for himself, he testified Sara would be the one driving in general. David wouldn't like to drive on Main Street. Sara would do it. Yakov stated "He (David) was very much depending on Sara."

Leslie Klein's Testimony:

The Petitioner offered testimony of his receipt from Mr. Klein of an April 24, 2018 email that read:

"In 2022, Sara Green passed away. Subsequently, David Green came into the office and stated he wanted to leave everything just like the wishes of their mother stated in the 1998 will and trust. My feeling is that Sara Green wanted everything to go to the four families." (Admitted into evidence as Exhibit 4).

Mr. Klein testified, however, that "the four families are the four people named in 1998 trust. "Families" is basically the siblings, the three siblings that were alive of his mother, and Ofra. That's it." Mr. Klein further explained that:

> "the four families refer to the four people named in the 1998 trust. Not their children and grandchildren, absolutely not. The 1998 trust is very clear. David wanted to give everything to the survivor of them. I mean you look at the language is very clear. This families here doesn't mean that David wanted to give money to the children and grandchildren of these four people. The answer is no. Families means, at that time, in 1998, three of the siblings of his mother were alive so he wanted to give it to three of the siblings of his mother, plus Ofra. That's what that means, families."

Mr. Klein was not sure if David gave him a copy of his will before or after Mr. Klein drafted David's 1998 Trust for him. Mr. Klein's recollection is before but he was not sure.

In Request for Admission NO. 59, Mr. Klein admitted David gave him a copy of his 1975 Will after David executed the Trust. When asked to confirm if he was unable to discuss with David the distinction between this dispositive language in his will to the dispositive language that he drafted for his Trust which Mr. Klein transcribed, Mr. Klein maintained that he discussed it with David at length, that the language that he drafted was much different than the language in this will.

When pressed to admit that Mr. Klein did not have a chance to discuss the dispositive language in David's 1975 Will with David Green before he signed his 1998 Trust, Mr. Klein stated

"That is correct, but I had a chance to discuss it with him after '98. That's the answer."

Mr. Klein stated during the trial, "I think I probably had the will when he gave me his change from his '75 will. But I definitely discussed it with him a number of times. I don't remember exactly if it was '98, 2000, 2002, 2005, but he made very clear to me what he wanted to do."

With regard to Sara's Trust, Mr. Klein stated the following:

> "At any rate, there was not too much attention paid to Sara's Schedule B, this paragraph, because Sara's Trust had nothing in it. Zero. All the time we spent was on David's Trust. And also Sara was much older than David. Sara was the mother of David and Sara died in 2002. And so everybody assumed in 1998 that Sara will give everything to David. So all the discussion that we had was not on Sara's trust. We didn't discuss Sara's Trust at all. All the discussion was on David's Trust."

Mr. Klein did not believe Schedule B was ambiguous at all. He has been doing trusts for 53 years and to him it was very clear. "It says or the survivor of them".

Mr. Klein admitted that David Green was a hoarder, and testified that he hoarded many things. He also testified, however, that he believed it was appropriate for David to draft the dispositive language and that David was a very smart guy. Mr. Klein stated David worked for Lockheed. David was in charge of elections in Van Nuys. Mr. Klein testified David was supervising a bunch of people. He was a business man. Mr. Klein asserted that "the fact that he was a hoarder has nothing to do with whether he was smart or not."

Mr. Klein testified that when one of the three named siblings died, David came into the office to inquire about what happens now. Mr. Klein told David it will go to the two survivors who are the siblings of his mother and to Ofra, so three people will get it. Mr. Klein testified that David assumed that if all three of the older generation dies, the siblings of his mother, then Ofra will get everything but Mr. Klein stated he never told him that. Mr. Klein explained that he admits that David never told him that Ofra gets everything, but David knew that if the three siblings of his mother died, then Ofra will get everything.

Mr. Klein admitted that when he first responded to the RFA asking him to admit that David never told him he wanted Ofra to receive his entire estate, he denied it (Exhibit 12-3, February 20, 2023) But then two months later, he changed his answer and admitted it (Exhibit 13-4, dated April

21, 2023)

Mr. Klein confirmed that at the time that he met with David and he signed his Trust, David did not say he wanted everything to go to Ofra.

When Mr. Klein was asked if at a later time David said to him he wanted everything to go to Ofra, Mr. Klein responded "Well, when the first person died from his mother's siblings, he told me that the three older people will die and when the three older people, his mother's siblings, will die, everything will go to Ofra, yes." Mr. Klein discussed this with David. David never told Mr. Klein this was not fair, that is what David wanted. Mr. Klein told David that if he wants to do something else, they had to do an amendment because it says or the survivor of them and the person who died now is out. David told Mr. Klein he was not doing an amendment because now that he has passed away, he's out.

When David signed his Trust agreement, Mr. Klein did not meet with him alone. David was always with his mother. When Mr. Klein explained the trust property, trust distribution, and trust administration to David, he did not have any questions.

Mr. Klein discussed Schedule B with David on November 18, 1998. He first discussed Schedule B when David first came into the office---five or six weeks earlier. Mr. Klein confirmed that Schedule B is what David wanted and Mr. Klein explained to him that he is going to follow his wishes.

David gave Mr. Klein a paper with four names on it. David gave Mr. Klein the language starting from "In the event Sara Green shall predecease trustor". Mr. Klein discussed this language with David before he included it in the Trust. David said it was perfect. It is not Mr. Klein's practice to include language from a client if he did not believe that the language adequately followed their (the client's) intent.

Mr. Klein testified that David Green was sophisticated. David handled all the issues with tenants. David's mother was never involved. It was always done by David. David rented the places, David evicted tenants.

Witness Klein appeared to be equivocal as to his opinion regarding schedule B when comparing Exhibit 4 with Exhibit 28.

Exhibit 28 is a July 22, 2018 e-mail admitted into evidence, sent to Shirley Galili, then attorney for Ofra, by Mr. Klein. Mr. Klein read into the record the following: "I feel that based upon the fact that it is very probable that Ofra will receive 100 percent since David Green knew that three of the beneficiaries of the trust passed away, and he did not make any changes."

Exhibit 29 is an e-mail dated August 16, 2018 written by Mr. Klein to Ms. Galili. Mr. Klein read into the record the third paragraph:

> "David Green had the opportunity to change the language on the trust and he did not do so. I talked to David Green a number of times to advise him to revise the trust, but he never did. I was his only attorney for the last 20 years."

Mr. Klein verified that he testified earlier that he met with David after all three of the other named beneficiaries in the Trust had passed away. He could not remember when that meeting or conversation took place. He verified it was an in-person meeting at Mr. Klein's office. Mr. Klein verified that of the four people named in Exhibit 1, on page 6, Chaim Keshet, Leah Kuriansky, and Yafa Ariel had all passed away as of the date of that meeting. Mr. Klein told David at that meeting that "the three siblings of your mother have passed away so the only one that's left now is Ofra and she will get 100 percent unless you make a new trust or you do an amendment to your trust." Mr. Klein testified that David said he is not changing anything. David did not explain why. David just said this is the way he wanted it done. Mr. Klein did not have any other discussions with David on that day nor did he ever have any discussion with Mr. Green after this date concerning the provisions of his Trust.

Mr. Klein testified that David said when they were children they always played together, Ofra and him. David also said when he came to Israel, he would always stay at Ofra's place.

Mr. Klein could not remember if it was Ofra Orjachovsky or David Green who told him about their relationship as children. He conceded it could be it was Ofra.

Mr. Klein was impeached with Request for Admission NO 39: Admit that your understanding of David and Ofra's relationship is based upon what Ofra, Ofra's son and Ofra's attorney Shirley Galili told you after David's death. Admitted. Mr. Klein was impeached with Request for Admission NO 40: Admit that you do not have personal knowledge whether David

had a (sic) a close relationship with Ofra other than what Ofra, Ofra's son and Ofra's attorney Shirley Galili told you after David's death. Admitted.

Mr. Klein admitted that David gave him the names and the language. In regard to Exhibit 1, paragraph 3 A of Schedule B, David provided Mr. Klein the content starting with "In the event". The first sentence of said paragraph, "The rest, residue..." was written by Mr. Klein.

## III. FINDINGS:

### A. A PETITIONER'S EXTRINSIC EVIDENCE HAS FAILED TO MEET ITS BURDEN OF PROOF THAT THERE IS A LATENT AMBIGUITY AND THE PLAIN MEANING OF THE TRUST INSTRUMENT SUPPORTS RESPONDENT'S POSITION THAT OFRA IS THE SOLE BENEFICIARY

i.) The court will sustain Objection No. 1 in so far as the Petitioner did testify that the "survivor of them" sounded very ambiguous and he believes he is the survivor of them. The court agrees with Respondent, however, and finds that Gil Ariel's conclusory lay opinion fails to meet Petitioner's burden of proof by a preponderance of the evidence that the subject phrase was fairly susceptible of two or more constructions.

ii) Probate Code §§ 810-811 are instructive in determining the capacity issues raised by Petitioner. Under § 810(a), "...there shall exist a rebuttable presumption affecting the burden of proof that all persons have the capacity to make decisions and to be responsible for their acts or decisions." Further, under § 810(b), "A person who has a mental or physical disorder may still be capable of contracting, conveying, marrying, making medical decisions, executing wills or trusts, and performing other actions."

Finally, under § 810(c): "A judicial determination that a person is totally without understanding, or is of unsound mind, or suffers from one or more mental deficits so substantial that, under the circumstances, the person should be deemed to lack the legal capacity to perform a specific act, should be based on evidence of a deficit in one or more of the person's mental functions rather than on a diagnosis of a person's mental or physical disorder."

///

*California Trust and Probate Litigation* § 6.9, 3. Evidentiary Requirements, provides further insight on the capacity issues raised by Petitioner:

> The Due Process in Competence Determinations Act requires, for a determination that a person lacks capacity to do a certain act, support by evidence of a deficit in at least one of a list of specific mental functions, grouped into the following categories (Prob C §811(a)):
>
> - Alertness and attention;
> - Information processing;
> - Thought processes; and
> - Ability to modulate mood and affect.
>
> A deficit in one of the specified functions may be considered, however, only if the deficit, by itself or in combination with one or more other mental function deficits, significantly impairs the person's ability to understand and appreciate the consequences of his or her actions regarding the decision in question. Prob C §811(b). The court may take into consideration the frequency, severity, and duration of periods of impairment. Prob C §811(c). The mere diagnosis of a mental or physical disorder is not itself sufficient to support a determination that a person is of unsound mind or lacks the capacity to perform the act in question. Prob C §811(d).

Petitioner proffered stipulated fact No. 3 to question David's mental status: "VARDA KURINANSKY, YAKOV ARIEL AND MAOZ KASHTY will testify that David appeared to suffer from an undiagnosed psychological condition that was first observed by YAKOV ARIEL following David's military service in Korea, and that YAKOV AIREL AND MAOZ KASHTY personally observed hoarding activity by David." (Joint Stipulation Re Testimony of Varda Kurianksy, Yakov Ariel and Maoz Keshet, filed with the court on September 6, 2024). In addition, Petitioner's lay witnesses testified not only about mental conditions, but the effect of the mental condition on David, without foundation or expert qualifications. Varda, for example, initially testified that Sara was the one who was making the decisions and David followed whatever she wanted. Varda, later admitted, however, she was not an expert and she was not trained to render an opinion about somebody else's soul or spirit. She conceded David had no difficulty functioning during her visits. Court will overrule Objection No. 3 and Objection No. 5 in so far as Varda's testimony does not rebut the presumption of capacity per § 810. Yakov Ariel testified, in response to whether Yakov observed instances where David had difficulty performing basic tasks for himself, that Sara would be the one driving in general. David wouldn't like to drive on Main Street.

Sara would do it. Yakov stated "He (David) was very much depending on Sara." Like Varda, Yakov's testimony does not rebut the presumption of capacity per § 810 based on these percipient observations. As such, Objections No. 3 and No. 5 are overruled as to Yakov's testimony regarding David's mental status.

Petitioner's argument that David had a mental condition of hoarding and an undiagnosed psychological condition that proves he was not capable of drafting the language for trust distribution is simply not supported by the evidence and speculative at best. The Court agrees with Respondent that there is a lack of an evidentiary nexus between arguing David was a hoarder or David was dependent on his mother or David had an undiagnosed psychological condition and concluding David was incapable of drafting the distribution language of the trust instrument. The court agrees with Respondent that Petitioner's lay witnesses have minimal foundation to determine if David had capacity to draft the distributive trust language.

As cited in *California Trust and Probate Litigation* § 6.10, "...it is often useful to engage a psychiatric or psychological expert to give testimony regarding the mental capacity of the testator or trustor. Such testimony is useful on the issue of mental capacity...".

Petitioner counters by citing *In re Marriage of Teegarden*, 181 Cal. App. 3d 401, 409:

> "A lay witness has long been competent to testify to an opinion, "based on his [or her] observation of facts perceptible to the senses, of the health or disease of another. (*Robinson* v. *Exempt Fire Ins. Co.* (1894) 103 C. 1, 5 . . . .)" (Witkin, Cal. Evidence (2d ed. 1966) The Opinion Rule, § 399, p. 359, italics omitted.) By a parity of reasoning, it did not require expert testimony to conclude from the evidence regarding husband's symptoms, including incontinence and general inability to function at the most rudimentary level, that his ability to support himself had been severely if not totally destroyed by illness."

While the court agrees with the holding in *Teegarden*, lay witness observation here of hoarding or an undiagnosed psychological condition does not provide a nexus for the court to find David did not have the capacity to draft the distributive language of his trust filtered through the statutory scheme of §§ 810-811.

Even assuming arguendo that the hoarding behavior and an undiagnosed psychological condition can be taken as evidence of some form of mental deficit, Probate Code § 811 provides

that a determination of a lack of capacity must be supported by evidence of a specific deficit in a particular mental function, and evidence demonstrating a correlation between that deficit and the decision at issue. No evidence has been submitted indicating a correlation between hoarding behavior and the undiagnosed psychological condition and any of the mental functions listed in Probate Code § 811. To the contrary, evidence has been presented that David was an intelligent man with the capacity to manage complex tasks such as managing tenancies and evictions, without any specific deficits in his alertness, attention, or thought processes. This specific evidence was not refuted by Petitioner. Even if the hoarding indicated some deficit, no evidence has been presented connecting any theoretical deficit to the specific task of drafting dispositive language in a trust. As such, the burden of overcoming the presumption of capacity under Probate Code section 810 has not been met.

The court notes that Mr. Klein testified that David was a very smart guy. Mr. Klein conceded that David was a hoarder and he hoarded a lot of things, but he was a very smart guy. Mr. Klein explained that David at one time worked for Lockheed, he was in charge of elections in Van Nuys, and he was a supervisor. As Mr. Klein stated, the fact David was a hoarder had nothing to do with whether David was smart or not. Notably, Petitioner did not provide evidence to directly refute the above observations of Mr. Klein either through impeachment with discovery responses or contradictory witness testimony.

In addition, case law supports Mr. Klein. See *Estate of Mann,* 184 Cal.App.3d 593 603, "[O]ld age, feebleness, forgetfulness, **filthy personal habits, personal eccentricities, (bold type added)**, failure to recognize old friends or relatives, physical disability, absent-mindedness and mental confusion do not furnish grounds for holding that a testator lacked testamentary capacity". See also *California Trust and Probate Litigation* § 6.13: "Although not conclusive, testimony of the attorney who drafted the will or trust is entitled to much weight, especially when he or she is a subscribing witness. *Estate of Goetz* (1967) 253 CA2d 107. In *Goetz,* the drafting attorney related a long series of relevant details that the testator had provided him to support a finding of testamentary capacity." *Id.*

The court finds that Petitioner has not met the burden of proof to overcome the rebuttable

presumption that all persons have the capacity to make decisions and to be responsible for their acts or decisions under § 810(a).

iii.) Petitioner argues that David and Ofra did not have a close relationship to conclude David never intended for Ofra to be the sole beneficiary. In contrast, Petitioner proffers stipulated fact No. 2: "VARDA KURIANSKY, YAKOV ARIEL and MAOZ KASHTY, who resided in San Diego, CA for several years, will testify about their own close family relationship between David and Sara and David and Sara's close family relationship with other members of the extended family." There is precious little evidence regarding whether David and Ofra had a close relationship. Varda Kuriansky testified David never mentioned Ofra. Ms. Kuriansky further stated Ofra never mentioned David, despite having a nice relationship with Ofra, seeing her once a month. Based on this limited testimony, the court is not persuaded it can make a finding that David and Ofra did not have a close relationship. Secondly, even assuming arguendo that David and Ofra did not have a close relationship and David and Sara had a close relationship with Varda, Yakov, and Maoz and other members of the extended family, the court cannot find that David did not intend to leave everything to Ofra and as such will overrule Objection No. 5 on this issue. Mr. Klein testified that he verified with David what would happen if the three siblings predeceased David, namely the sole beneficiary would be Ofra. Mr. Klein testified David did not want to change anything. Petitioner did not directly refute Mr. Klein's testimony on this issue with impeachment via discovery responses or provide contradictory witness testimony. Indeed, Petitioner's lay witnesses never discussed the Trust with David. The court finds the extrinsic evidence developed at trial supports Respondent's position that the trust assets would go to Ofra as the sole beneficiary. Petitioner failed to proffer evidence to overcome its burden of proof as to what "survivor of them" was to mean, if not Respondent's plain meaning interpretation per *Newmark*.

Petitioner's argument mirrors the Opposition to the Motion for Summary Judgment that was ultimately denied. While Petitioner has raised issues of material fact for the court to consider, it has failed to meet its burden of proof that there is a latent ambiguity. The court is not persuaded that even assuming arguendo that David was a hoarder, had an undiagnosed psychological condition, did not have a close relationship with Ofra, and had a close relationship with members

of the extended family, that there is a latent ambiguity with a reasonably susceptible meaning wherein David's intent was to distribute to all of the heirs of the named beneficiaries.

The trial testimony showed Mr. Klein believed, based upon the circumstances surrounding the execution of the Trust including Mr. Klein's conversations with David, that Ofra was the sole beneficiary. Petitioner argues in his Brief in Opposition to Motion for Judgment, filed September 15, 2023, and Objection No. 4, that Mr. Klein's statement in the Exhibit 4, April 24, 2018 e-mail, opining Sara meant to give it to the "families", supports his position. The court notes that Petitioner did not proffer or develop the underlying basis for this opinion by Mr. Klein. Was Mr. Klein's opinion based on statements from Sarah? If so, were these statements made during the execution of her estate planning documents? In contrast, Mr. Klein testified at trial he meant "families" to mean the individual siblings and Mr. Klein in two subsequent e-mails, Exhibits 28 and 29, to Ms. Galili, Ofra's former attorney, clearly supports the Respondent's position that Ofra is the sole beneficiary. Even assuming the court were to give Mr. Klein's initial opinion in Exhibit 4, as interpreted by Petitioner, greater weight than his subsequent e-mails and trial testimony and assuming arguendo Petitioner's argument that Mr. Klein is not reliable and credible is true based on impeachment due to contradictory discovery responses, the totality of the extrinsic evidence fails to meet Petitioner's burden of proof. Petitioner's lay witnesses never discussed the Trust with David. Observations of hoarding activity, an undiagnosed psychological condition coupled with assertions that David and Ofra were not close in comparison to the close relationship of David and his extended family, simply do not support a finding of a latent ambiguity reasonably susceptible of another meaning. As the Petitioner has the burden of proof and given the totality of Petitioner's extrinsic evidence has failed to show that there is a latent ambiguity reasonably susceptible of another meaning, the court is left with the plain meaning of the trust instrument that Ofra is the sole beneficiary and the presumption of capacity under § 810. As such, the court will overrule Objection No. 4.

iv) Objection No.2 is overruled. Petitioner argues the totality of Exhibits 2, 5, 6,7 and 8, which were created contemporaneously with the Trust, along with the alleged scrivener error in Exhibit 2, shows extrinsic evidence of David's alternate intent. How? Exhibits 5 and 6 are two

Grant Deeds wherein Sara transferred to David her interest in two North Hollywood real properties located at 6256 Beck Avenue and 11555 Sylvan Street. Concurrent with the signing of those Grant Deeds, David executed two Trust Transfer Deeds, Exhibits 7 and 8, into his Trust. Where is the evidence showing that David and Sarah specifically intended to provide for the issue of the named beneficiaries as part of a common dispositive scheme? There was no percipient testimony, exhibits, or any competent evidence supporting the Petitioner's belief that the specific intent of David and Sarah was to provide for the four families at the time the Trust was drafted. Speculation and conclusory arguments simply do not meet Petitioner's burden of proof.

The Code of Civil Procedure § 631.8 motion is granted.

**B. PETITIONER DID NOT MEET HIS BURDEN OF PROOF TO ESTABLISH REFORMATION OF THE TRUST IS PROPER**

Petitioner argues that given the testimony of the drafting attorney, Leslie Klein, that David drafted the Trust's dispositive language, and the totality of facts demonstrate that David relied on the 1975 Will as a basis for that language but that he inaccurately abbreviated the content of that will due to issues of David's capacity as testified to by Petitioner's witnesses. Petitioner concludes this failure establishes a basis for reformation, the purpose of which is to effectuate the common intention of the party or parties, when that intention was incorrectly reduced to writing. (*Bailard v. Marden* (1951) 36 Cal.2d 703, 708. *Getty v. Getty* (1986) 187 Cal.App.3d 1159, 1178 (to support reformation, mistake must occur in reducing settlors' intent to writing).)

The Court agrees with Respondent that Petitioner did not provide any evidence supporting the required elements for reformation of the Trust. Reformation of an instrument is available where "clear and convincing evidence establishes that the [instrument] contains a mistake in the expression of the [decedent's] intent at the time the [instrument] was drafted and also establishes the [decedent's] actual specific intent at the time the [instrument] was drafted." (*Estate of Duke* (2015) 61 Cal.4th 871, 875.)

Petitioner failed to provide any evidence of any alleged mistake in the expression of the Trustor's intent. No evidence was offered that the Trustor *specifically intended* to provide for the heirs of any predeceased beneficiaries at the time the Trust was drafted. No witness testified to any mistake in the expression of David's intent. In fact, every witness other than the drafting attorney, Mr. Klein, testified that they did not discuss the Trust with Mr. Green. Petitioner was required to prove both elements by *clear and convincing* evidence. Petitioner failed to meet his burden of proof on either of the required elements for reformation.

The Court reiterates that it did not hear any evidence in Petitioner's case in chief supporting that David relied on the 1975 Will in drafting the trust distribution provisions. Petitioner simply makes a conclusion that David inaccurately abbreviated the content of the 1975 Will. Testimony that David was a hoarder and had an undiagnosed psychological condition or that David did not have a close relationship with Ofra but had a close relationship with his extended family does not meet the clear and convincing standard needed to reform the subject Trust. Said testimony does not mean David made a mistake.

Further, Petitioner did not provide a nexus between Sara's trust and David's trust and why the court should find their intent was to provide for the descendants of the named beneficiaries. Petitioner provides no evidence of Sara's intent let alone David's intent. As such, conclusory statements that David and Sara had a common dispositive scheme ring hollow to the Court.

## IV. CONCLUSION

The Code of Civil Procedure § 631.8 motion is **granted** as Petitioner's extrinsic evidence has failed to meet its burden of proof that there is a latent ambiguity. Code of Civil Procedure § 631.8 motion is also **granted** as to Petitioner's request for reformation of the Trust.

DATED: March 27, 2024

[signature]
RUBEN GARCIA
Judge of the Superior Court

LAW OFFICE OF LAWRENCE M. LEBOWSKY
11150 W. OLYMPIC BLVD., SUITE 1120, LOS ANGELES, CALIFORNIA 90064

The Court, having considered the oral and written argument of counsel, and weighed the evidence, and having granted Respondent's Motion for Judgment pursuant to Code of Civil Procedure section 631.8 and issued its Statement of Decision on March 27, 2024, the Court hereby enters judgment in this matter as follows:

1. The Code of Civil Procedure § 631.8 motion is granted as Petitioner's extrinsic evidence has failed to meet its burden of proof that there is a latent ambiguity. Code of Civil Procedure § 631.8 motion is also granted as to Petitioner's request for reformation of the Trust.

2. The Amended Petition for Instructions Regarding Construction of Trust Terms filed on April 28, 2021 by Gil Ariel is denied with prejudice.

Dated: ~~July _____, 2024~~ 08/28/2024

Ruben Garcia
JUDGE

Hon. Ruben Garcia
Judge of the Superior Court of the State of California

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
6454 VAN NUYS BLVD., SUITE 150
VAN NUYS, CA 91401

A true and correct copy of the foregoing document entitled (*specify*): MOTION TO RECONSIDER DEFAULT JUDGMENT AGAINST POLICY OF ROSALIA FELDMAN

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ______________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) ______________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/13/2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

JEFFREY DULBERG, ESQ. VIA EMAIL TO: JDULBERG@PZJLAW.COM
JOHN LUCAS, ESQ. VIA EMAIL TO: JLUCAS@PSZJLAW.COM
PACHULSKI STANG ZIEHL & JONES LLP
10100 SANTA MONICA BLVD., 13TH FLOOR , LOS ANGELES, CA 90067

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/06/2026 | LESLIE KLEIN | /S/ LESLIE KLEIN |
| *Date* | *Printed Name* | *Signature* |